Filed 8/27/24  In re D.L. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re D.L., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E083634 |
| Plaintiff and Respondent, | (Super.Ct.No. J294435) |
| v. | OPINION |
| D.M., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Conditionally reversed with directions.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel and David Guardado, Deputy County Counsel, for Plaintiff and Respondent.

1

Danielle M. (Mother) appeals from the juvenile court's order terminating her parental rights to her son, Daniel L. She argues that the San Bernardino County Department of Children and Family Services (CFS) failed to comply with its duty of further inquiry under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) and related state law. CFS concedes the error. We agree with the parties and conditionally reverse and remand.

BACKGROUND

Daniel came to CFS's attention in September 2022 when the agency received a referral alleging that he had been born positive for syphilis and that Mother had tested positive for methamphetamine twice in the two months before he was born. When CFS interviewed Mother, she told the social worker that she did not have any Indian ancestry.[1] CFS filed a dependency petition concerning Daniel, alleging that Mother failed to protect Daniel within the meaning of subdivision (b) of Welfare and Institutions Code section 300 because she struggled with substance abuse and untreated mental health issues. (Unlabeled statutory references are to the Welfare and Institutions Code.)

At the detention hearing later that month, Mother reported that she did not have any Indian ancestry, and she filed a Judicial Council form ICWA-020 (Parental Notification of Indian Status) stating the same. The juvenile court detained Daniel from Mother.

---

[1] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

In January 2023, the juvenile court took jurisdiction over Daniel pursuant to subdivision (b) of section 300. The court removed Daniel from Mother's care and ordered reunification services for her. The court also found that ICWA did not apply to Daniel.

During the reunification period, Mother provided the social worker with contact information for the maternal uncle and the maternal grandfather and said that they might have Indian ancestry. During an interview on August 16, 2023, the maternal uncle told the social worker that there may be Blackfoot or Apache "in his bloodline" and that his father would know more. That same day, the social worker left a voice message for the maternal grandfather, but the record contains no additional information regarding CFS's efforts to interview him.

On August 22, 2023, the court terminated Mother's reunification services and set the section 366.26 hearing. CFS recounted its ICWA investigation in a November 2023 status review report prepared for that hearing, but the agency's description did not accurately reflect the social worker's conversation with the maternal uncle. The report stated that the social worker spoke with the maternal uncle on October 5 and 6 and that he gave "no response" regarding Indian ancestry. The report did not mention the August 16 conversation in which he reported possible Blackfeet or Apache heritage.

In January 2024, the social worker contacted three additional maternal relatives as part of its ICWA investigation. Gabrielle B., Daniel's adult sibling, reported that she was

3

unaware of any Indian ancestry. Both the maternal grandmother and the maternal great aunt reported that they "may have" Indian ancestry, but neither could identify a tribe.

In a February 2024 status review report, CFS stated that on January 30, 2024, it sent a certified letter to the Bureau of Indian Affairs (BIA) "regarding possible Native American Ancestry for the child." CFS's letter is not included in the appellate record.

At the section 366.26 hearing in March 2024, CFS reported that it had not received a response from the BIA, and the court again found that ICWA did not apply to Daniel. The court also found that Daniel was likely to be adopted, and the court terminated Mother's parental rights.

DISCUSSION

Mother argues that CFS failed to conduct an adequate further inquiry in response to the maternal uncle's claims of Blackfeet and Apache ancestry. CFS concedes that we should conditionally reverse and remand for a proper further inquiry. We agree with the parties.

ICWA requires notice to Indian tribes "in any involuntary proceeding in state court to place a child in foster care or to terminate parental rights 'where the court [or social worker] knows or has reason to know that an Indian child is involved.'" (*In re Isaiah W.* (2016) 1 Cal.5th 1, 8, quoting 25 U.S.C. § 1912(a); accord, § 224.3, subd. (a).) To be an Indian child within the meaning of ICWA, a child must be either (1) a member of a federally recognized tribe or (2) eligible for membership and the biological child of a member. (25 U.S.C. § 1903(4).)

4

The child welfare department and the juvenile court have an "'affirmative and continuing duty to inquire' whether a child in a dependency proceeding 'is or may be an Indian child.'" (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 678, quoting § 224.2, subd. (a).) "The duty to inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry." (*Ibid.*)

This case involves the duty of further inquiry, which is triggered when there is "reason to believe that an Indian child is involved." (§ 224.2, subd. (e).) Under subdivision (e) of section 224.2, there is reason to believe an Indian child is involved if the court or the social worker "has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1).)

Further inquiry includes, among other things, (1) interviewing extended family members to gather the information required for the ICWA notice; (2) contacting the BIA for assistance in (i) "identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership in" and (ii) "contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership status or eligibility"; and (3) contacting "the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (§ 224.2, subd. (e)(2)(A)-(C).) "Contact with a tribe shall, at a minimum, include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of notices under [ICWA]." (*Ibid.*) "Contact

5

with a tribe shall include sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case." (*Ibid.*) In addition, CFS "must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status." (Cal. Rules of Court, rule 5.481(a)(5).)

We agree with the parties that the maternal uncle's claim of possible Blackfeet or Apache ancestry triggered the duty of further inquiry. We also agree that the record does not reflect that CFS adequately discharged that duty. First, if there is reason to believe that an Indian child is involved, then CFS "must make a meaningful effort to contact specified family members who might have pertinent information." (*In re K.R.* (2018) 20 Cal.App.5th 701, 707.) The maternal grandfather was one such relative, because the maternal uncle said that his father "would know more" about his family's Indian ancestry. Yet the only evidence in the record concerning CFS's efforts to interview him shows that the social worker called him once and left a voice message. A "meaningful effort" to contact a relative requires more than a single attempt.

Second, although the record reflects that CFS contacted the BIA by letter, because that letter is not in the record, we do not know if it conveyed the maternal uncle's claim of possible Blackfeet or Apache ancestry. If the letter did not contain that information, then the letter would not be of much help to CFS's investigation. And given that CFS did

6

not include that information in its status review report for the court, it appears possible that the agency also neglected to include it in its letter to BIA.

Third, CFS was required to contact the Blackfeet and Apache tribes to seek information regarding Daniel's membership or eligibility for membership. (§ 224.2, subd. (e)(2)(C).) CFS concedes that it did not do so.

Accordingly, we conclude that CFS failed to discharge its duty of further inquiry. Because the court's finding at the section 366.26 hearing that ICWA did not apply "implie[d] that the duty of inquiry under California's ICWA-related law had been satisfied," we further conclude that the record does not contain substantial evidence to support the finding. (*In re Austin J.* (2020) 47 Cal.App.5th 870, 887; see also § 224.2, subd. (i)(2) [ICWA finding "subject to reversal based on sufficiency of the evidence"]; *In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467 [ICWA findings reviewed for substantial evidence].) Finally, we agree with the parties that the error requires conditional reversal. (See *In re Dezi C.* (Aug. 19, 2024, S275578) __ Cal.5th __ [2024 Cal. Lexis 4634, *23] [an inadequate ICWA inquiry "requires conditional reversal with directions for the child welfare agency to comply with the inquiry requirement of section 224.2," because "it is impossible to ascertain whether the agency's error is prejudicial"].)

## DISPOSITION

The order terminating parental rights is conditionally reversed. On remand, the juvenile court shall order CFS to comply with its duty of further inquiry under subdivision (e) of section 224.2 and, if applicable, the duty to provide notice to the tribes

(25 U.S.C. § 1912(a); § 224.3).  If the court subsequently determines that CFS has complied and that ICWA does not apply, then the court shall reinstate the order terminating parental rights.  If the court determines that ICWA applies, then it shall proceed in conformity with ICWA and related California law.  The remittitur shall issue immediately pursuant to the parties' stipulation.  (Cal. Rules of Court, rule 8.272(c)(1).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ_____
J.

We concur:


MILLER_____
Acting P. J.


RAPHAEL_____
J.